FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ MAR 1 7 2009 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
.................................................................x
COUNTY OF NASSAU,

                  **Petitioner**

    - versus -

JUDITH L. CHASE, JOSEPH M. ZORC and
ZORC & CHASE,

                  **Respondents**
.................................................................x

**Memorandum of Law**

**08-CV 0082 (TCP, WDW)**

**Related Cases:**

CV 05-00662 (TCP, WDW) (pending)
CV 05-04856 (TCP, WDW) (pending)
CV 04-05386 (TCP, WDW) (closed)
CV 04-03133 (TCP, WDW) (closed)

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS'
MOTION TO VACATE AN ARBITRATION AWARD**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
................................................................x
In the Matter of the Petition of Judith L.
Chase, *pro se*, Joseph M/ Zorc, *pro se* and Zorc
& Chase, *pro se*,                                     **Memorandum of Law**

**Petitioners**

**Related Cases:**

JUDITH L. CHASE, JOSEPH M. ZORC and          CV 05-00662 (TCP, WDW) (pending)
ZORC & CHASE,                                 CV 05-04856 (TCP, WDW) (pending)
                                              CV 04-05386 (TCP, WDW) (closed)
                            **Respondents**   CV 04-03133 (TCP, WDW) (closed)
................................................................x


## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO VACATE AN ARBITRATION AWARD

### TABLE OF CONTENTS

I. INTRODUCTION ........................................................... 1

II. *VACATUR* OF THE AWARD IS GOVERNED BY THE FEDERAL
    ARBITRATION ACT ................................................... 2

1. The Arbitration Concerns Transactions Affecting Interstate Commerce .......... 2

2. The Parties' Agreement May Not Limit Grounds for *Vacatur* ................... 2

III. MANIFEST DISREGARD OF THE LAW ................................... 3

3. Standards for Establishing Manifest Disregard ............................... 3

4. The Arbitrators Knew of the Governing Legal Principles of New York
   State Law and Refused to Apply Them or Ignored Them Altogether ............ 3

5. Failure to Address the Law ............................................... 3

**IV. MANIFEST DISREGARD OF NEW YORK LAW ON WAIVER** . . . . . . . . . . . . . . . . 4

  **6. New York Law on Waiver of Contractual Obligations** . . . . . . . . . . . . . . . . . . . . . . . . . . 4

  **7. Manifest Disregard of Undisputed Fact Is Not Irrelevant** . . . . . . . . . . . . . . . . . . . . . . 5

  **8. New York Law on Waiver Is Well Defined and Explicit** . . . . . . . . . . . . . . . . . . . . . . . . 6

  **9. New York Law on Waiver Applies to Municipal Corporations** . . . . . . . . . . . . . . . . . . 7

  **10. Manifest Disregard of the Law on Late Billing** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**V. MANIFEST DISREGARD OF THE LAW ON *QUANTUM MERUIT*** . . . . . . . . . . . . . . 8

  **11. A Terminated Attorney Is Entitled to Recover Fees in *Quantum Meruit*** . . . . . . . . . . 8

  **12. Itemization Not Required for *Quantum Meruit* Claim under New York Law** . . . . . . 9

  **13. Z&C's Accomplishments Are Highly Relevant** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**VI. MANIFEST DISREGARD OF THE LAW ON FEE FORFEITURE** . . . . . . . . . . . . . . . 9

  **14. Relevance of Findings in Section D of the Award** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

  **15. New York Law on Termination for Cause** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

  **16. The Individual Findings in Section D of the Award Do Not, as a Matter of Law, Constitute Grounds for Forfeiture of Legal Fees** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   **a. Testimony re First Meeting with the Current County Attorney** . . . . . . . . . . . 11
   **b. "Notice of Claim" for Tortious Interference with Contract Rights** . . . . . . . . . 12
   **c. Threat to Go to the Press** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   **d. Civil RICO Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   **e. Alleged Accusation of Diverting Funds** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   **f. Inadvertent Transmittal of Limerick** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   **g. Argument re Termination of Agreement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**VII. MANIFEST DISREGARD OF THE LAW ON ACCOUNT STATED** . . . . . . . . . . . . 14

  **17. Timeliness of Objection Is a Conclusion of Law** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ii

18. Objection Must Be to the Reasonableness of the Fees .......................... 15

19. *Post Hoc* Objections Cannot Defeat an Account Stated ........................ 15

20. Untimeliness of Objections ....................................................... 16

21. Partial Payment ..................................................................... 16

VIII. MANIFEST DISREGARD OF THE LAW ON ERRORS IN BILLING ......... 17

22. Reformatting Errors Do Not Justify Forfeiture of Fees ........................ 17

23. New York Law on Billing Errors ............................................... 17

IX. MANIFEST DISREGARD OF THE LAW ON AWARD OF LEGAL FEES ....... 18

24. Fee Shifting .......................................................................... 18

25. County's Failure to Maintain Contemporaneous Time Records ................ 18

26. The County's Fee Application Does Not Identify the Dates on Which Work
    Was Performed ..................................................................... 19

27. The County's Fee Application Is Not Supported by an Affidavit in the Form
    That Would Be Accepted by a Bankruptcy Court ............................ 19

28. Failure to Provide Professional Biographies ................................. 20

29. Failure to Support the Hourly Billing Rate Claimed ......................... 20

30. No Other Basis for Award of Fees ............................................. 20

XI. THE AWARD IS SUBJECT TO *VACATUR* UNDER SECTION 10(a)(3)
    OF THE FEDERAL ARBITRATION ACT .................................... 21

31. Federal Arbitration Act § 10(a)(3) ............................................ 21

32. Misconduct .......................................................................... 21

iii

**XI.  BIAS; EVIDENT PARTIALITY** ........................................... 21

   **33.  The Award Demonstrates Bias and Evident Partiality** ........................ 21

   **34.  Court's Obligation to Examine the Record for Evident Partiality** .............. 22

   **35.  Paragraph A.2 of the Award Also Demonstrates Manifest Disregard of the Law** .. 23

   **36.  Discriminatory Treatment of Counsel** .................................... 24

   **37.  Evident Partiality Makes Remand to the Arbitrators an Ineffective Remedy** ..... 24

**XII.  CONCLUSION** ........................................................ 24

   **38.  Review; Supervisory Powers** ........................................... 24

iv

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
.................................................................x

COUNTY OF NASSAU,                                    **Memorandum of Law**

                 **Petitioner**              **CV 08 0082 (TCP, WDW)**

   - versus -                                       **Related Cases:**

**JUDITH L. CHASE, JOSEPH M. ZORC and**      **CV 05-00662 (TCP, WDW) (pending)**
**ZORC & CHASE,**                              **CV 05-04856 (TCP, WDW) (pending)**

                                        **CV 04-05386 (TCP, WDW) (closed)**
                                        **CV 04-03133 (TCP, WDW) (closed)**

                **Respondents**
.................................................................x


## MEMORANDUM OF LAW IN SUPPORT OF PETITION
## TO VACATE AN ARBITRATION AWARD


### TABLE OF AUTHORITIES

**CASES**

**United States Supreme Court**

*The Citizens Bank  v. Alafabco, Inc.,* 539 U.S. 52 (2003) .................................. 2


**United States Court of Appeals for the Second Circuit**

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir. 1974), *aff'd*, 887
    F.2d 408 (2d Cir. 1989) ................................................. 5 n.2

*DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997), *cert.*
    *denied*, 522 U.S. 1049 (1998) ............................................ 3

*Fahnestock & Co., Inc. v. Waltman,* 935 F.2d 512 (2d Cir. 1991) ........................ 6

*Halligan v. Piper Jaffray*, 148 F.3d 197 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 6

*Hardy v. Walsh Manning Securities, L.L.C.*, 341 F.3d 126 (2d Cir. 2003) . . . . . . . . . . . . . . 2, 5, 6

*Hoeft v. MVL Group, Inc.*, 343 F.3d 57 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Joseph Brenner Associates, Inc. v. Starmaker Entertainment, Inc.*, 82 F.3d 55
(2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Application of Kamerman*, 278 F.2d 411 (2d Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mar Oil, S.A. v. Morrissey,* 982 F.2d 830 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136
(2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20, 23

*New York Telephone Company v. Communications Workers of America Local
1100,* 256 F.3d 89 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Porzig v. Dresdner Kleinwort Benson North America LLC,* 497 F.3d 133 (2d Cir. 2007) . . . 2, 22

*Revson v. Cinque & Cinque,* 221 F.3d 71 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995), *cert. denied*,
516 U.S. 916 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wallace v. Buttar*, 376 F.3d 182 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 22

## United States District Courts

*ACE Limited v. CIGNA Corporation*, 2001 U.S. Dist. LEXIS 16508 (S.D.N.Y. 2001) . . . . 20, 23

*Aiello v. Town of Brookhaven,* 2005 U.S. Dist. LEXIS 11462 (E.D.N.Y. 2005) . . . . . . . . . . . 18

*Bigda v. Fischbach Corporation*, 898 F.Supp.1004 (S.D.N.Y. 1995), *aff'd* 101
F.3d 108 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Bresler v. Hostage,* 696 F.Supp. 46 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Commission Express National, Inc. v. Rikhy*, 2006 U.S. Dist. LEXIS 8716 (E.D.N.Y. 2006) . . 23

*Cooper v. Sunshine Recoveries, Inc.*, 2001 U.S. Dist. LEXIS 8938 (S.D.N.Y. 2001) . . . . . . . . 23

*Holt Marine Terminal, Inc. v. United States Lines*, 472 F.Supp. 487 (S.D.N.Y. 1978) . . . . . . . 15

*King v. JCS Enterprises,* 325 F.Supp.2d 162 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Louima v. City of New York*, 2004 U.S. Dist. LEXIS 13707 (E.D.N.Y. 2004) . . . . . . . . 10-11, 13

*Meriwether v. Coughlin*, 727 F.Supp. 823 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . 5 n. 2, 19

*Newman v. Silver*, 553 F. Supp. 485 (S.D.N.Y. 1982), *aff'd in part, remanded on
other grounds*, 713 F.2d 14 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*New York State Association for Retarded Children, Inc. v. Carey,* 544 F.Supp. 330
(E.D.N.Y. 1982), *reversed on other grounds* 711 F.2d 1136 (2d Cir. 1983) . . . . . . . 17, 24

*Oleg Cassini, Inc. v. Couture Coordinates, Inc.*, 297 F.Supp. 821 (S.D.N.Y. 1969) . . . . . . . 6, 16

*Samara v. Gangemi & Gangemi*, 2005 U.S. Dist LEXIS 9056 (E.D.N.Y. 2005) . . . . . . . . . 15, 16

*Tokyo Electron Arizona, Inc. v. Discreet Industries Corp.,* 215 F.R.D. 60 (E.D.N.Y. 2003) . . . 18

## New York State Court of Appeals

*Emigrant Industrial Savings Bank v. Willow Builders, Inc.*, 290 N.Y. 133 (1943) . . . . . . . . 13, 14

*Planet Construction Corporation v. Board of Education of the City of New York*,
7 N.Y.2d 381 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Martin v. Camp*, 219 N.Y. 170 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People ex rel. Johnson v. Board of Supervisors of Delaware County,* 45 N.Y. 196 (1871) . . . . . 5

*Tillman v. Komar*, 259 N.Y. 133 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*TSS-Seedman's, Inc. v. Elota Realty Company*, 72 N.Y.2d 1024 (1988) . . . . . . . . . . . . . . . . . . . 6

## New York State Supreme Court, Appellate Division

*Aub v. Hoffmann,* 120 A.D. 50 (1st Dep't 1907) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gormly v. Smith,* 165 A.D. 169 (1st Dep't 1914) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Keller v. National Surety Co.,* 222 A.D. 767 (2d Dep't 1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*O'Connell & Aronowitz v. Gullo,* 229 A.D.2d 637, 638-9 (3d Dep't 1996),
    *app. den.* 89 N.Y.2d 803 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pace v. Amend,* 164 A.D. 206 (1st Dep't 1914 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Squires v. Kissam,* 121 A.D. 607 (1st Dep't 1907) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wells v. State of New York,* 267 A.D.2d 179 (1st Dep't 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATUTES

Federal Arbitration Act, 9 U.S.C. §§ 9 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 18, 21, 25

## OTHER

76 Harvard L. Rev. 1656 (1963), Note: The Supervisory Power of the Federal Courts . . . . . . . 25

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
...............................................................x
COUNTY OF NASSAU,

                 Petitioner

     - versus -

JUDITH L. CHASE, JOSEPH M. ZORC and
ZORC & CHASE,

                 Respondents
...............................................................x

Memorandum of Law

08-CV 0082 (TCP, WDW)

Related Cases:

CV 05-00662 (TCP, WDW) (pending)
CV 05-04856 (TCP, WDW) (pending)
CV 04-05386 (TCP, WDW) (closed)
CV 04-03133 (TCP, WDW) (closed)

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS' MOTION TO VACATE AN ARBITRATION AWARD

### I. INTRODUCTION

Respondents move this Court to vacate an arbitration Award [1] issued in favor of the County of Nassau on the grounds that: (i) the arbitrators manifestly disregarded the law, (ii) the Award demonstrates evident partiality and bias, (iii) the arbitrators refused to hear pertinent and material evidence and (iv) the arbitrators interfered with the presentation of Zorc & Chase's direct case in such a manner as to deny Respondents a fair and impartial hearing.  The Award is a "reasoned" award issued by a panel of three arbitrators, all of whom were practicing attorneys and members of the bar of the State of New York.  Z&C Affidavit at ¶ 11.  Respondents' Motion is based on Sections 10(a)(2) and 10(a)(3) of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*,

---

[1] Terms in this Memorandum have the definitions assigned in Respondent's Motion to Vacate ("Motion").  A copy of the October 17, 2007 Award (including the arbitrators' November 28, 2007 order modifying same) is annexed as Exhibit A.6 to the Z&C Affidavit.

and on the manifest disregard standard established by the United States Court of Appeals for the Second Circuit. *Porzig v. Dresdner Kleinwort Benson North America LLC,* 497 F.3d 133, 139 (2d Cir. 2007)*; Wallace v. Buttar*, 376 F.3d 182, 189 (2d Cir. 2004); *Hardy v. Walsh Manning Securities, L.L.C.*, 341 F.3d 126, 129 (2d Cir. 2003); *New York Telephone Company v. Communications Workers of America Local 1100,* 256 F.3d 89, 91 (2d Cir. 2001); *Halligan v. Piper Jaffray*, 148 F.3d 197, 202 (2d Cir. 1998).

## II. *VACATUR* OF THE AWARD IS GOVERNED BY THE FEDERAL ARBITRATION ACT

**1. The Arbitration Concerns Transactions Affecting Interstate Commerce.** The underlying dispute in the Arbitration involves payment for legal services performed in and affecting interstate commerce. Z&C Affidavit at ¶ 5. Arbitration proceedings which concern services performed in or affecting interstate commerce are governed by the Federal Arbitration Act. *The Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 56 (2003).

**2. The Parties' Agreement May Not Limit Grounds for *Vacatur*.** Nassau County inserted, at Paragraph 13 of the parties' Agreement, an unenforceable clause attempting to limit the grounds for *vacatur* to those "set forth in the New York Civil Practice Law & Rules." This provision is unenforceable to the extent it imposes limits on Section 10(a) of the Federal Arbitration Act and/or the "manifest disregard" standard adopted by the courts. See *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 64 (2d Cir. 2003) in which the Second Circuit held: "The manifest disregard standard together with § 10(a) represent a floor for judicial review of arbitration awards below which parties cannot require courts to go, no matter how clear the parties' intentions."

## III.  MANIFEST DISREGARD OF THE LAW

**3.  Standards for Establishing Manifest Disregard.**  In order to establish manifest disregard of the law, the party seeking *vacatur* of an arbitration award must demonstrate "that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Halligan, supra,* 148 F.3d at 202, citing *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997), *cert. denied*, 522 U.S. 1049 (1998).

**4.  The Arbitrators Knew of the Governing Legal Principles and Refused to Apply Them or Ignored Them Altogether.**  The parties' Agreement provides that it is governed by the law of the State of New York.  Z&C Affidavit at ¶ 11.  The arbitrators knew of the governing legal principles under well defined, explicit and clearly applicable New York law and were thoroughly briefed on these principles.  Z&C Affidavit at ¶¶ 14 and 23.  The arbitrators' award of costs and legal fees was governed by Federal legal principles as interpreted by the United States Court of Appeals for the Second Circuit.  The arbitrators expressly directed the parties to submit affidavits and proof of costs and legal fees in accordance with the requirements of the Bankruptcy Courts in the Second Circuit.  Z&C Affidavit at ¶ 24.  The arbitrators knew of the governing legal principles under well defined, explicit and clearly applicable law of the Second Circuit on fee shifting and were thoroughly briefed on these principles.  Z&C Affidavit at ¶¶ 28.  The arbitrators refused to apply these principles of New York and Federal law or ignored them altogether.

**5.  Failure to Address the Law.**  The arbitrators' manifest disregard of the law is underscored by the fact that Zorc & Chase briefed 26 cases to the arbitrators in its Pre-Hearing Brief (Z&C Affidavit, Exhibit B.1), 57 cases in its Post Hearing Brief (Z&C Affidavit, Exhibit B.3),

28 cases in its Reply Brief (Z&C Affidavit, Exhibit B.5) and eight cases in its Letter of Objections to the County's Fee Application (Z&C Affidavit, Exhibit B.7). The arbitrators manifestly disregarded all of these cases. They did not even attempt to distinguish them or explain why they were ignoring the well defined and explicit legal principles set forth therein. The "reasoned" Award cites no case law whatsoever. Z&C Affidavit at ¶ 22.

### IV. MANIFEST DISREGARD OF NEW YORK LAW ON WAIVER

**6. New York Law on Waiver of Contractual Obligations.** The parties' dispute in the Arbitration concerned Zorc & Chase's claim that the County refused to review – and pay the outstanding remainder due on – Z&C's bills for legal services rendered in 2002, after making partial payments in April and May of 2003. Z&C Affidavit at ¶¶ 4, 39.c, 43, 45, 47, 51 and 86. The County contended in the Arbitration that it was not obligated to pay Z&C's 2002 bills in full because they were rendered in "block" billing format and were not delivered to the County on a monthly basis as allegedly required by the Agreement. Z&C Affidavit at ¶¶ 28.e, 34, 35, 42 and 47. Z&C argued that the County had waived both of these objections to Z&C's 2002 bills because (a) the County had accepted and paid bills in the "block" billing format since the inception of the Agreement in 1993 and (b) the County had accepted and paid bills rendered months after performance of the services for almost ten years. Z&C Affidavit at ¶ 34. The Award held: "We reject Zorc and Chase's argument that the County waived its right to ask for bills in conformity with the Retainer Agreement because prior County administrations had paid bills in Zorc and Chase's 'block billing' format." Award at ¶ B.3. This finding is in manifest disregard of the law for two reasons. First, it intentionally misstates Z&C's legal argument, which is not confined to waiver by "prior County administrations." Z&C Affidavit at ¶ 97. The

current administration also waived the alleged contract requirements. Z&C Affidavit at ¶¶ 42 and 45. There can be no colorable justification for the finding that Z&C's claim of waiver relies on the actions of a prior administration. This is not a matter of the arbitrators' *interpretation* of the evidence. Rather, the arbitrators blatantly ignored Z&C's *legal argument*. Second, it ignores well established law that the County is bound by its waiver of contractual obligations whether they were waived by the prior or the current administration. *People ex rel. Johnson v. Board of Supervisors of Delaware County,* 45 N.Y. 196, 199 (1871): "as the board are the agents of their county in the matters confided to them, when acting for it therein, their contracts, express or implied, within the scope of their authority, for legal services, are binding upon the county." [2]

**7. Manifest Disregard of Undisputed Fact Is Not Irrelevant.** In holding that error of fact is not an *independent* basis for *vacatur*, the Second Circuit in *Wallace v. Buttar, supra,* did not hold that a disregard for undisputed facts and uncontested documentary evidence is irrelevant. Rather, the Court held that the factual record in an arbitration may be considered "for the purpose of discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law." *Wallace v. Buttar*, 378 F.3d at 193. This is consistent with the Second Circuit's *vacatur* of the award in *Hardy v. Walsh Manning Securities, supra,* for manifest disregard of the law where the arbitrators disregarded the fact that respondent in the arbitration proceeding was a co-employee of the claimant when it held him liable to the claimant under the theory of *respondeat superior*. 341

---

[2] "Block" billing is not prohibited in the Second Circuit. *Meriwether v. Coughlin*, 727 F.Supp. 823, 827 (S.D.N.Y. 1989). Further, it is not a requirement that the records show 'the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.' *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 473 (2d Cir. 1974).

F.3d at 130. It is also consistent with the Second Circuit's *vacatur* of the award in *Halligan v. Jaffray, supra*, where the arbitrators disregarded "very strong evidence of age-based discrimination" (148 F.3d at 198) so as to reach a conclusion that was in manifest disregard of the law. Arbitrators may have the power to *interpret* the *evidence*, but they do not have the authority to *disregard undisputed documentary proof* in order to justify their manifest disregard of the law. *Halligan v. Piper Jaffray, supra*, 148 F.3d at 204. If no ground for the arbitrators' decision can be inferred from the facts of the case, the award must be vacated. *See Fahnestock & Co., Inc. v. Waltman,* 935 F.2d 512, 516 (2d Cir. 1991). The arbitrators in the instant Arbitration did not hold that they disbelieved the testimony that both the prior and the current administration paid Z&C's bills in the "block" billing format. Instead they simply ignored the undisputed testimony and documentary evidence that both administrations had done so. Ignoring proven facts in order to support a manifest disregard of the law is no more permissible in the instant Arbitration than it was in *Hardy v. Walsh Manning* or *Halligan v. Piper Jaffray.*

**8. New York Law on Waiver is Well Defined and Explicit.** The law in New York on waiver is well defined, explicit and clearly applicable to the issues in the Arbitration. It has been summarized as follows:

> A party may, by words or conduct, waive a provision in a contract
> or eliminate a condition in a contract which was inserted for his
> benefit and no consideration is necessary for such a waiver to be
> effective. * * *   [T]he New York authorities have held that the
> conduct of the parties may be such as to indicate a waiver of the
> condition; and, once manifested, it may not be suddenly aban-
> doned. [Citations omitted]

*Oleg Cassini, Inc. v. Couture Coordinates, Inc.*, 297 F.Supp. 821, 830-1 (S.D.N.Y. 1969). *See,* also, *TSS-Seedman's, Inc. v. Elota Realty Company*, 72 N.Y.2d 1024, 1027 (1988) and the five

7

other cases cited on this well defined legal principle in Z&C's Post-Hearing Brief at page 3.

**9.   New York Law on Waiver Applies to Municipal Corporations.**   It is equally clear under New York law that waiver is applicable to municipalities. *Planet Construction Corporation v. Board of Education of the City of New York*, 7 N.Y.2d 381, 385 (1960). *See*, also, the four other cases cited on this well defined legal principle in Z&C's Post-Hearing Brief, pp.7-8.

**10.  Manifest Disregard of the Law on Late Billing.**   Even if the County had not waived its right to demand more current submittal of 2002 bills,  the Second Circuit has held that, under New York law, an attorney's failure to bill her client for a period of two years was not a material breach of her retainer agreement. *Joseph Brenner Associates, Inc. v. Starmaker Entertainment, Inc.*, 82 F.3d 55, 57-8 (2d Cir. 1996). *See*, also, *Wells v. State of New York*, 267 A.D.2d 179 (1st Dep't 1999), holding that a state's refusal to process an attorney's late vouchers constitutes a breach of contract, under circumstances highly analogous to those facing Z&C:

> The evidence at trial supports the Court of Claims' findings that vouchers often could not be submitted in timely fashion because of the failure of 18-B Plan employees to promptly process paperwork, that vouchers were often paid even though submitted late, and that in certain circumstances often applicable to claimant, attorneys were actually encouraged to delay submission of vouchers.  These findings support the conclusion that the Plan's refusal to process claimant's late vouchers was a breach of contract.

Thus, even if the County had not waived its putative right to insist upon more contemporaneous billing, the arbitrators disregarded New York law establishing that delayed submittal of vouchers does not justify nonpayment of legal fees.

## V. MANIFEST DISREGARD OF THE LAW
## ON *QUANTUM MERUIT*

**11. A Terminated Attorney Is Entitled to Recover Fees in *Quantum Meruit.*** The

arbitrators manifestly disregarded New York law on a terminated attorney's right to recover legal

fees in *quantum meruit*. It has been black letter law in the State of New York for over 90 years

that an attorney whose services have been terminated by a client is entitled to recover in *quantum*

*meruit* for services performed. *Martin v. Camp*, 219 N.Y. 170, 176 (1916). The Award states, at

Paragraph F that "Based upon the reasons set forth above and based upon the existence of the

Retainer Agreement, we deny Zorc and Chase's claims based upon *quantum meruit*." This is a

manifest disregard of the law. The law in New York is explicit that, if a client terminates an

attorney, the attorney is no longer bound by the terms of the retainer agreement. See *Tillman v.*

*Komar*, 259 N.Y. 133, 135 - 136 (1931) in which the Court of Appeals held: "The client is

entitled to cancel his contract of retainer but such an agreement cannot be partially abrogated.

Either it wholly stands or totally falls." See, also, the cases cited at ¶ 46.c of Z&C's Post Hearing

Brief. It is not the function of this Court to search the record for some other colorable reason for

the arbitrators' failure to recognize Zorc & Chase's entitlement to *quantum meruit* compensation,

because the arbitrators set forth their reason in ¶ F of the Award. The arbitrators' prefatory

statement (*i.e.* "based upon the reasons set forth above") also demonstrates a manifest disregard

of the law. Even if the statements in Sections A through E of the Award were not demonstrably

untrue and were not the product of evident partiality, they cannot constitute grounds for denying

*quantum meruit* compensation. See ¶¶ 14 - 23 below.

**12. Itemization Not Required for *Quantum Meruit* Claim under New York Law.**

It is well established under New York law that, where an attorney is seeking *quantum meruit* compensation for legal services rendered over a period of a year, "[t]he questions to be litigated will be whether the plaintiffs were employed and the value of the services rendered, to be determined as a single charge, or by ascertaining the value of the services relating to particular matters in the course of the employment." *Pace v. Amend,* 164 A.D. 206, 208 (1st Dep't 1914 ). "Where a lump charge is made in such a case, the defendant should know . . . not a valuation of each detail, but an enumeration of general services." *Aub v. Hoffmann,* 120 A.D. 50, 52 (1st Dep't 1907). Accord, *Squires v. Kissam,* 121 A.D. 607 (1st Dep't 1907). "There is no occasion for requiring the plaintiff to specify the *particular days* on which the services were rendered, or the *time* occupied *each day.*" *Gormly v. Smith,* 165 A.D. 169, 170 (1st Dep't 1914). See, also, *Keller v. National Surety Co.,* 222 A.D. 767 (2d Dep't 1927). These principles were briefed to the arbitrators. Z&C Affidavit at ¶ 23. They were manifestly disregarded.

**13. Z&C's Accomplishments Are Highly Relevant.** That the arbitrators' manifestly disregarded the law on *quantum meruit* is also evident from their criticism, in ¶ I.2(b) of the Award, claiming that Z&C's evidence and argument about their accomplishments for the County were "irrelevant." The arbitrators were well aware that an attorney's accomplishments go to the essence of the attorney's entitlement to *quantum meruit* relief. Z&C Affidavit at ¶ 79.

## VI. MANIFEST DISREGARD OF THE LAW
## ON FEE FORFEITURE

**14. Relevance of Findings in Section D of the Award.** Section D of the Award contains a litany of seven findings of purported "fact" which the arbitrators contend gave them

"serious doubts" regarding "the veracity and accuracy" of Zorc & Chase's 2002 bills. None of

these alleged "facts" has anything whatsoever to do with the veracity or accuracy of Z&C's bills.

They relate only to the deteriorating relationship between Z&C and members of the Office of the

County Attorney. Their only possible relevance goes to whether the County terminated Zorc &

Chase's services "for cause." The Award purports not to address the issue of termination for

cause.[3] Nevertheless, although the arbitrators did not address termination for cause in *haec*

*verba*, Section D of the Award can only be interpreted as denying Zorc & Chase's claims on

these grounds. Denominating various events as "highly questionable and arguably unprofession-

al conduct," even if correct, would not go to the accuracy of bills for work performed in 2002, a

year prior to the alleged conduct. It goes solely to the question of whether the County Attorney

terminated Zorc & Chase for legally sufficient cause.

**15. New York Law on Termination for Cause.** Under New York law, an attorney is

entitled to be paid for services performed unless he is terminated for legal cause. The cause must

relate to the services performed. Only where the attorney is terminated for a legally recognized

"cause" related to the representation can the client avoid payment of fees. As this Court held in

*Louima v. City of New York*, 2004 U.S. Dist. LEXIS 13707 (E.D.N.Y. 2004):

> A determination that a withdrawal is permissible for an attorney
> who has appeared on behalf of a client before a court is distinct
> from a finding that any termination was or was not "for cause" for
> purposes of that attorney's right to compensation. See, e.g., *Casper*
> *v. Lew Lieberbaum & Co, Inc.,* 1999 U.S. Dist. LEXIS 7779, 1999
> WL 335334, at *5 (granting motion to withdraw based on irrecon-
> cilable conflict but finding that discharge was not "for cause" for
> purposes of fee determination).

---

[3] In point of fact, the arbitrators refer to the issue of termination as "irrelevant" in
¶¶ D.7 and I.2(c) of the Award.

11

*Louima* at *186-7. This Court went on to hold that a client's discharge of an attorney is deemed to be for cause "only where the misconduct relates to the representation for which the fees are sought." *Id.* at *230. Accord, *Application of Kamerman*, 278 F.2d 411, 413-14 (2d Cir. 1960); *Mar Oil, S.A. v. Morrissey,* 982 F.2d 830, 840 (2d Cir. 1993). The Second Circuit has affirmed a decision of the United States District Court for the Southern District of New York holding that even an attorney who engages in unconscionable overcharging is nevertheless entitled to recover in *quantum meruit. Newman v. Silver*, 553 F. Supp. 485, 496-97 (S.D.N.Y. 1982), *aff'd in part, remanded on other grounds*, 713 F.2d 14 (2d Cir. 1983).

**16.   The Individual Findings in Section D of the Award Do Not, as a Matter of Law, Constitute Grounds for Forfeiture of Legal Fees.** The seven individual findings in Section D of the Award constitute a highly biased misinterpretation of the documentary evidence; however, Zorc & Chase's claim of manifest disregard of the law is not based on the arbitrators' intentional disregard of the evidence. It is based on the fact that, under well defined and explicit New York law (fully briefed to the arbitrators), these findings – even if they were accurate – would not justify forfeiture of any part of Zorc & Chase's fees for 2002.

**a.   Testimony re First Meeting with the Current County Attorney.** There is no basis whatsoever for the arbitrators' contention that Joe Zorc and Judith Chase's testimony about their original meeting with the current County Attorney when she first took office "was directly contradicted by their own prior testimony regarding such meeting." There was no conflict. Z&C Affidavit at ¶¶ 38-40. Nevertheless, even if this finding were incontrovertibly correct, allegedly inconsistent testimony in 2006 - 2007 cannot retroactively convert the 2003 termination of Zorc & Chase into one for "cause."

**b. Notice of Claim for Tortious Interference with Contract Rights.** The Notice of Claim referred to in ¶ D.2 of the Award was filed on January 16, 2004, almost two months after the County terminated Zorc & Chase. Z&C Affidavit at ¶ 52. It cannot constitute "cause" for a termination that had already taken place.

**c. Threat to Go to the Press.** Paragraph D.3 of the Award found that Zorc & Chase threatened to publish articles in local newspapers regarding the County Attorney's refusal to review Z&C's 2002 bills. While Zorc & Chase made no overtures to the press (Z&C Affidavit at ¶ 51), the Second Circuit held in *Revson v. Cinque & Cinque,* 221 F.3d 71, 80 (2d Cir. 2000) that tarnishing an attorney's reputation by speaking with a news reporter about prospective litigation against him is not sanctionable. Quoting from its opinion in *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995), *cert. denied*, 516 U.S. 916, the Court stated:

> Unless such measures are needed to protect the integrity of the judicial system or a criminal defendant's right to a fair trial, a court's steps to deter attorneys from, or to punish them for, speaking to the press have serious First Amendment implications. Mere warnings by a party of its intention to assert nonfrivolous claims, with predictions of those claims likely public reception, are not improper.

**d. Civil RICO Claims.** The Award found, at ¶ D.4 that Joe Zorc threatened a civil RICO action against "at least one County attorney." This does not constitute "cause" for termination under New York law. As the Second Circuit held in *Revson v. Cinque & Cinque, supra*, "[a]n attorney is entitled to warn the opposing party of his intention to assert colorable claims, as well as to speculate about the likely effect of those claims being brought." 221 F.3d at 80. Moreover, the Court specifically addressed a warning about a potential civil RICO action (*Id.* at 81): "We also see no sanctionable conduct in Burstein's threat to bring a civil RICO claim

against Cinque. * * * If the district court's view were correct, no attorney could ever threaten to bring a civil RICO suit without violating the ethical rules." The County Attorney did not terminate Zorc & Chase until more than a year after this warning was given and therefore elected, as a matter of law, to waive any right she might arguably have had to terminate Z&C's services on that basis. *Emigrant Industrial Savings Bank v. Willow Builders, Inc.*, 290 N.Y. 133, 143 (1943); *Bigda v. Fischbach Corporation*, 898 F.Supp. 1004, 1011 (S.D.N.Y. 1995), *aff'd* 101 F.3d 108 (2d Cir. 1996) (Once a party elects to continue the contract, he can never thereafter elect to terminate the contract based on that breach).

**e. Alleged Accusation of Diverting Funds.** In Paragraph D.5 of the Award, the arbitrators mischaracterize a memorandum from Zorc & Chase to the County Attorney asking what had happened to previously encumbered funds in the Z&C contract lines as an accusation that "County officials" were "diverting funds." Even if the arbitrators' characterization were correct, this alleged "accusation" does not, as a matter of law, rise to "cause" for termination such as to justify forfeiture of fees. *Louima, supra* at *230. Moreover, the memorandum in question was sent on April 25, 2003. Z&C Affidavit at ¶ 85. The County Attorney did not terminate Zorc & Chase's services at that time and therefore elected, as a matter of law, to waive any right she might arguably have had to terminate Z&C's services on the grounds of this inquiry. *Emigrant Industrial Savings Bank, supra*; *Bigda v. Fischbach Corporation, supra*.

**f. Inadvertent Transmittal of Limerick.** Subparagraph D.5 of the Award refers to a limerick that was accidentally included in a Federal Express envelope sent to the County in March 2003. Z&C Affidavit at ¶ 44. Writing a humorous limerick which the County Attorney herself characterized as "quite amusing" (Z&C Affidavit at ¶ 44) does not constitute "cause" for

termination of an attorney's contract such as to justify forfeiture of fees. *See*, for example, *Revson v. Cinque & Cinque*, *supra*, in which the Second Circuit reversed the Southern District's imposition of sanctions against an attorney who apologized repeatedly for inappropriate language in a letter which compared scrutiny of financial records to a proctology exam. The County Attorney did not raise this issue with Zorc & Chase prior to arbitration and elected to waive any right she might arguably have had to terminate Z&C's services on the grounds of this limerick. *Emigrant Industrial Savings Bank, supra*; *Bigda v. Fischbach Corporation*, *supra*. Moreover, Nassau cannot justify nonpayment of bills for services rendered in 2002 by citing a limerick it received in May of 2003 and first complained of in arbitration proceedings.

      **g. Argument re Termination of Agreement.** In Subparagraph D.7 of the Award the arbitrators found that Zorc & Chase's arguments as to the termination of the Agreement "although not relevant to this arbitration," raised questions as to the accuracy of Zorc & Chase's 2002 bills. This *non sequitur* demonstrates a manifest disregard of the law.[4] As explained above, the question of cause for termination is definitely relevant to this Arbitration.

### VII. MANIFEST DISREGARD OF THE LAW ON ACCOUNT STATED

      **17. Timeliness of Objection Is a Conclusion of Law.** In Paragraph E.1 of the Award, the arbitrators found that "the County timely objected in writing to the Zorc and Chase bills." This is not a finding of fact but a conclusion of law and is subject to review by this Court under the manifest disregard standard.

---

    [4] It is a *non sequitur* because, regardless of their relevance to the Arbitration, arguments about the termination of the Agreement cannot raise questions as to the accuracy of bills for services rendered and which resulted in the County's receipt of over $17 Million in additional Federal funding.

**18.   Objection Must Be to the Reasonableness of the Fees.** The County made no

objection to the amount of Z&C's 2002 bills until March 3, 2005 when it filed its Answering

Statement in the Arbitration. Z&C Affidavit at ¶ 49. An objection to "block" billing is not an

objection to the amount of a bill. By retaining Z&C's 2002 bills without objecting to the amount

of those bills, the County converted them into accounts stated. See *Samara v. Gangemi &*

*Gangemi*, 2005 U.S. Dist LEXIS 9056 (E.D.N.Y. 2005) at * 3 - 4 in which this Court held,

applying New York law:

> A client's objection must be timely and must be based on the
> reasonableness of the fees charged. * * * Thus, "an objection
> made for the first time upon the commencement of proceedings
> will not suffice."
>
> *          *          *
>
> Under New York law "it is not necessary [for an attorney] to
> establish the reasonableness of the fee since the client's act of
> holding the statement without objection will be construed as
> acquiescence as to its correctness." [Citations omitted]

*See,* also, the thirteen additional cases on this well defined legal principle cited in ¶¶ II.A and II.B

of Z&C's Pre-Hearing Brief and at page 9 of Z&C's Post Hearing Brief.

**19.   *Post Hoc* Objections Cannot Defeat an Account Stated.** It was not until the

commencement of its cross examination in this Arbitration on August 7, 2006 that the County

first expressed <u>any</u> specific objection to <u>any</u> of Z&C's 2002 billing entries. Z&C Affidavit at

¶ 49.  As noted above, it was not until the filing of its answering statement on March 3, 2005

that the County made <u>any</u> objection to the <u>amount</u> of Z&C's 2002 bills. Under New York law,

an objection not raised until the commencement of proceedings constitutes an act of bad faith.

*Holt Marine Terminal, Inc. v. United States Lines*, 472 F.Supp. 487, 489 (S.D.N.Y. 1978). Such

16

a belated objection cannot defeat an action for an account stated. *Bresler v. Hostage,* 696 F.Supp. 46, 49 (S.D.N.Y. 1988); *O'Connell & Aronowitz v. Gullo*, 229 A.D.2d 637, 638-9 (3d Dep't 1996), *app. den.* 89 N.Y.2d 803 (1996).

**20. Untimeliness of Objections.** At ¶ E.2 of the Award the arbitrators held that the County was "justified" in not objecting to Z&C's 2002 bills "immediately" because "the times between receipt of many bills and objection by the County were often far less than the times between when the legal services were allegedly rendered and when the bills were actually received by the County . . . ." This is a manifest disregard of the law. Although the County sent Z&C a peremptory one-paragraph letter in mid-January 2003 objecting to the use of "block" billing in 2001 and 2002 (Z&C Affidavit at ¶ 47), the County neither objected to the amount of Z&C's 2002 bills nor to any substantive billing entry until March 3, 2005, over two years after the bills were received. Z&C Affidavit at ¶ 49. Moreover, under New York law, the County's waiver of objections to "block" billing, "once manifested, may not be suddenly abandoned." *Oleg Cassini, Inc. v. Couture Coordinates, Inc.*, 297 F.Supp. 821, 830-1 (S.D.N.Y. 1969)

**21. Partial Payment.** The arbitrators found (Award at ¶ E.3) that the County's partial payment of Z&C's 2002 bills in April and May of 2003 "was a good faith accommodation and did not constitute any admission by the County of the total amount due." This is not dispositive of the issue. Under New York law the mere retention of an attorney's bills without objection to the reasonableness of the fees establishes an account stated. *Samara v. Gangemi & Gangemi*, *supra* at * 3 - 4. Although partial payment may *also* give rise to an account stated, it is *not* a necessary prerequisite to an account stated. *See* cases cited in ¶ 18 above.

## VIII.  MANIFEST DISREGARD OF THE LAW
## ON ERRORS IN BILLING

**22.  Reformatting Errors Do Not Justify Forfeiture of Fees.**  The arbitrators' findings

in Paragraph C.3 of the Award, as to the accuracy of Z&C's *reformatted* bills for 2002, also

demonstrate a manifest disregard of the law.[5]  During the evidentiary hearings, Z&C conceded

that the few errors in the reformatted bills (cited by the County) resulted from inadvertent errors

in transcription of hours from the original bills.  Z&C Affidavit at ¶ 91.  Z&C's claim was not

based on the reformatted, but on the original, 2002 bills.  Z&C Affidavit at ¶ 92.  Nassau's own

witness testified that there were no errors in Z&C's original bills.  Z&C Affidavit at ¶ 93.

**23.  New York Law on Billing Errors.**  The law is clear that errors in reconstructed time

(such as the reformatted bills) do not justify forfeiture of fees beyond those billed in error.  *See*,

for example, this Court's handling of reconstructed attorney time in  *New York State Association*

*for Retarded Children, Inc. v. Carey,* 544 F.Supp. 330, 339-340 (E.D.N.Y. 1982), *reversed on*

*other grounds* 711 F.2d 1136 (2d Cir. 1983).  *See*, also, *O'Connell v. Aronowitz & Gallo,* 229

A.D.2d 637, 639 (3d Dep't 1996), holding that an attorney's claim for fees was not defeated "by

defendants' proof that plaintiff double-billed for some items since this error was rectified at trial

and the correction was reflected in Supreme Court's decision."  During the August 24, 2006

hearing,  Zorc & Chase offered to restate Z&C's reformatted bills to eliminate the errors, but the

County and the arbitrators did not accept this offer.  Z&C Affidavit at ¶ 92.

---

[5] After termination of the Agreement, Z&C reformatted the original 2002 bills to convert
them from the "block" billing format, in a final, but fruitless, effort to avert arbitration and to
have the Office of the County Attorney review these bills.  Z&C Affidavit at ¶ 86.

## IX. MANIFEST DISREGARD OF THE LAW
## ON AWARD OF LEGAL FEES

**24. Fee Shifting.** Section I.2 of the Award directed Z&C to pay the County $90,062.50 for Nassau's purported legal fees in the Arbitration. Section I..3 directed Z&C to pay the County $82,484.81 for Nassau's share of the AAA administrative fees and expenses of the arbitrators. Section I.4 directed Z&C to bear the entire cost of 12 days of hearing transcripts and hearing room rentals. Z&C moves this Court to vacate all three of these directives not only because the Award itself is subject to *vacatur* under Section 10(a) of the Federal Arbitration Act and the manifest disregard standard, but because granting the County's fee and cost application constitutes a manifest disregard of the law even if the County were the prevailing party under a valid award. The County's cost and fee application does not conform to the legal standards established by the Second Circuit. See Z&C's letter of objections to the County's fee application (Z&C Affidavit, Exhibit B.7). These standards were expressly made applicable by the arbitrators themselves. Z&C Affidavit at ¶ 24. The arbitrators, having adopted these standards, nevertheless manifestly disregarded the County's failure to comply with them.

**25. County's Failure to Maintain Contemporaneous Time Records.** The Second Circuit requires that fee applications must be supported by contemporaneous time records. *New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir. 1983); *Aiello v. Town of Brookhaven,* 2005 U.S. Dist. LEXIS 11462 at *8-9 (E.D.N.Y. 2005); *King v. JCS Enterprises,* 325 F.Supp.2d 162, 166 (E.D.N.Y. 2004); *Tokyo Electron Arizona, Inc. v. Discreet Industries Corp.,* 215 F.R.D. 60, 62 (E.D.N.Y. 2003). The County's cost and fee application was submitted under cover of an affirmation (Z&C Affidavit, Exhibit B.6) disclosing

that none of the three County attorneys who provided services to Nassau in connection with the Arbitration maintained any contemporaneous time records whatsoever. Z&C Affidavit at ¶ 26. Even if they had not done so initially, once the County asserted its intention to seek attorney's fees in this Arbitration on August 24, 2006 (Z&C Affidavit at ¶ 26) its counsel was *obligated* to maintain contemporaneous time records thereafter. *New York State Association for Retarded Children v. Carey*, 711 F.2d at 1147-8. The County did not do so. Counsel's affirmation admits that his fee application is based entirely on "estimates." Not only does he estimate his own time, but he estimates the time of two other County attorneys, neither of whom has provided any written confirmation (let alone in affidavit form) of counsel's estimates. Z&C Affidavit at ¶ 26. The award of fees to the County is in manifest disregard of the law.

**26. The County's Fee Application Does Not Identify the Dates on Which Work Was Performed.** Fee applications in the Second Circuit must specify the dates on which the work was performed. *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *Meriwether v. Coughlin,* 727 F.Supp.2d 823, 827 (S.D.N.Y. 1989). The County's fee application does not do so. Z&C Affidavit at ¶ 26. The award of fees to the County under these circumstances is in manifest disregard of the law.

**27. The County's Fee Application Is Not Supported by an Affidavit in the Form That Would Be Accepted by a Bankruptcy Court.** The parties were directed on two separate occasions to submit affidavits in the form in which they would be submitted to a Bankruptcy Court in the Second Circuit. Z&C Affidavit at ¶ 24. Counsel's affirmation is not such an affidavit. Moreover, since he was not the time keeper for either of the other two County attorneys, his report of their alleged time and charges is entirely unsubstantiated by affidavit or other-

wise. The award of fees to the County is in manifest disregard of the law.

**28. Failure to Provide Professional Biographies.** Courts in the Second Circuit evaluating fee applications require the applicant to submit biographies of the professionals who performed services covered by the application in order to permit the court to evaluate whether the rates charged for their time are reasonable. *See, e.g.*, *ACE Limited v. CIGNA Corporation*, 2001 U.S. Dist. LEXIS 16508 (S.D.N.Y. 2001) at \* 16-17. Counsel's affirmation does not comply with this requirement in several respects. Z&C Affidavit at ¶¶ 28.d.

**29. Failure to Support the Hourly Billing Rate Claimed.** Counsel's affirmation claims that the appropriate hourly rate for all three attorneys covered by the County's fee application is $175 per hour. Z&C Affidavit at ¶ 28.b. There are several reasons why this rate is unsupported and inaccurate. Z&C Affidavit at ¶ 28.b. Moreover, a non-profit organization which may be entitled to apply for legal fees must begin the analysis of its proper hourly rates by reference to comparable rates of private law firms. *See, e.g. New York State Association for Retarded Children, supra,* 711 F.2d at 1151. Significantly, the County's application did not disclose the rates the County paid to outside counsel in three prior arbitrations with Zorc & Chase and at the outset of this Arbitration. Z&C Affidavit at ¶ 28.c.

**30. No Other Basis for Award of Fees.** The arbitrators' award of fees to the County cannot be justified by some "colorable" disposition on the part of the arbitrators to award the County a "reasonable" amount for "estimated" legal fees. There is no statutory basis for fee shifting in this Arbitration. *Quantum meruit* does not apply. There us no unjust enrichment justifying an equitable remedy and no implied-in-fact contract for Zorc & Chase to pay Nassau's legal fees. The arbitrators carved out an exception to the rule that each party pays its own legal

fees.  They did so based on submittal of fee applications in the form accepted by Bankruptcy

Courts in the Second Circuit.  The arbitrators cannot properly ignore the very legal principles

they enunciated and to which the parties agreed.  Their doing so constitutes a manifest disregard

of the law and voids any consent during the hearings to the award of legal fees.

## X. THE AWARD IS SUBJECT TO *VACATUR* UNDER SECTION 10(a)(3) OF THE FEDERAL ARBITRATION ACT

**31.   Federal Arbitration Act § 10(a)(3).**  Section 10(a)(3) of the Federal Arbitration Act

provides for *vacatur* of an arbitration award "where the arbitrators were guilty of misconduct in

. . . refusing to hear evidence pertinent and material to the controversy; or of any other misbeha-

vior by which the rights of any party have been prejudiced."

**32.   Misconduct.**  At Paragraph I.2 of the Award the arbitrators contend that Zorc &

Chase "did not comply with the directions and/or suggestions of the Tribunal regarding the con-

duct of the hearing."   In point of fact, Zorc & Chase was forced to comply with directions and

"suggestions" of the arbitrators that amounted to (a) their refusal to hear pertinent and material

evidence and (b) their refusal to permit Zorc & Chase to present its direct case as planned, so as

to prejudice Zorc & Chase's right to a fair and impartial hearing.  Z&C Affidavit at ¶ 98.

## XI.  BIAS; EVIDENT PARTIALITY

**33.   The Award Demonstrates Bias and Evident Partiality.**  Section 10(a)(2) of the

Federal Arbitration Act provides that an award may be vacated if "there was evident partiality . . .

in the arbitrators. . . ."   Courts applying this provision of the Federal Arbitration Act have gener-

ally been faced with situations in which one or more members of an arbitration panel have some

past, present or future business, social or professional relationship with one of the parties.  This is

not the case here. Rather, the Award is a one-sided, vitriolic attack on Zorc & Chase. It contains

so many demonstrably untrue and unsupportable "findings of fact" that it reveals the arbitrators'

evident partiality toward the County. While any one of these finding would not necessarily be

dispositive as to *vacatur*, taken together they are. As the Second Circuit held in *Porzig v. Dresd-*

*ner, Kleinwor, Benson, North America LLC*, *supra*, vacating a portion of an arbitration award:

"Taken individually, in all likelihood, such circumstances would not have overcome the defer-

ence owed to the Panel's award. Taken together, however, these circumstances create, if not the

perfect storm, then a disturbance ample enough to give us pause." 497 F.3d at 140. Z&C is not

asking this Court to "second guess" the arbitrators' evaluation of the testimony. Rather, it is

Z&C's position that the arbitrators' extensive litany of findings that ignore or counter documen-

tary proof and/or uncontested evidence demonstrates evident partiality, especially when consi-

dered in light of the conduct disclosed in ¶¶ 19, 98 and 99 of the Z&C Affidavit.

**34.   Court's Obligation to Examine the Record for Evident Partiality.** In *Wallace v.*

*Buttar, supra* the Second Circuit held that the evidentiary record in an arbitration can be examin-

ed in order to determine whether there was a manifest disregard of the law. 378 F.3d at 193.

Z&C submits that this Court must also examine the evidentiary record in the Arbitration in order

to determine whether the Award is subject to *vacatur* for evident partiality and bias. To hold

otherwise would be to elevate the common law standard of manifest disregard over the statutory

standard of evident partiality. Zorc & Chase does not argue that the Award should be vacated

due to the arbitrators' misinterpretation of testimony or disregard of minor facts in evidence.

Z&C's position is that the arbitrators' (a) perversion of uncontested testimony, (b) disregard of

undisputed documentary evidence and (c) bizarre assertion of alleged "facts" as to which there

was no testimonial or other evidence whatsoever, demonstrates evident partiality and failure to

render a fair and impartial award.   The Z&C Affidavit at ¶¶ 7 - 21, 40, 42, 43, 45, 46 and 49- 53

sets forth a compendium of alleged "facts" found by the arbitrators which are manifestly dis-

proved by uncontested evidence in the Arbitration.   These are not subject to "interpretation."

The vast number of such findings which exhibit flagrant disregard or perversion of the undis-

puted truth, when taken as a whole, reveal such evident bias as to demonstrate that all of the

arbitrators' findings – even those based on colorable interpretations of the evidence and evalua-

tion of the testimony – were so tainted with partiality that the Award must be vacated under

Section 10(a)(2) of FAA.

**35. Paragraph A.2 of the Award Also Demonstrates Manifest Disregard of the Law.**

Courts that have disallowed fees for "duplicative" work have always allowed the fees of at least

one of the attorneys performing such work. *See Commission Express National, Inc. v. Rikhy*,

2006 U.S. Dist. LEXIS 8716 (E.D.N.Y. 2006) at * 21, in which this Court called the argument

against billing for multiple attorneys "specious." In *Cooper v. Sunshine Recoveries, Inc.*, 2001

U.S. Dist. LEXIS 8938 (S.D.N.Y. 2001) at * 10,  the Southern District observed that "it is

common in a complex case for more than one attorney to work on a particular draft," but

disallowed a portion of two attorneys' time because the case was "anything but complex" and did

not justify one attorney in New York and two more in Chicago.  In *ACE Limited v. CIGNA Cor-*

*poration,* 2001 U.S. Dist. LEXIS 16508 (S.D.N.Y. 2001) at * 7 the court did reduce fees for

duplicative time; however, it did so because it deemed it excessive to utilize twenty-three profes-

sionals "for this type of common motion involving straightforward issues."   In *New York State*

*Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983), the Second

Circuit held that the Eastern District was acting within its discretion when this Court made percentage reductions to account for "excessive and duplicative" hours in the fee application (711 F.2d at 1146). However, this Court's reductions for "duplicative" hours referred in all instances to a single attorney billing twice for the same work (due to faulty reconstruction of his time). *New York State Association for Retarded Children, Inc. v. Carey, supra,* 544 F.Supp. 330 at 339-340. When this Court addressed the issue of more than one attorney participating in an activity, it held the argument that this was duplicative to be "without merit" (544 F. Supp. at 341). This Court found that reduction for multiple-attorney time was inappropriate because "[a] case of this magnitude and complexity often requires attendance at depositions, conferences and hearings by more than one attorney." *Ibid.*. On appeal, the Second Circuit refused to disturb this Court's findings on duplicative time. Zorc & Chase's appeals for Nassau County were of great magnitude (\$250 Million) and complexity. Z&C Affidavit at ¶ 33.

**36. Discriminatory Treatment of Counsel.** In addition to their perversions of undisputed facts and disregard of documentary proof, the arbitrators further revealed their evident partiality by discriminatory treatment of counsel for the parties. Z&C Affidavit at ¶ 99.

**37. Evident Partiality Makes Remand to the Arbitrators an Ineffective Remedy.** In view of the arbitrators' evident partiality and their manifest disregard of the law in order to reach a result predetermined by their bias, remand to the arbitrators would be an obviously ineffectual remedy in this case

## XII. CONCLUSION

**38. Review; Supervisory Powers.** The Award was rendered in manifest disregard of the law. It is fatally tainted by the arbitrators's evident partiality. The arbitrators were guilty of

misconduct in refusing to hear evidence pertinent and material to the Arbitration and in interfering with the presentation of Z&C's direct case in such manner as to prejudice Z&C's right to a full, fair and impartial hearing.  The Award must be vacated pursuant to Section 10(a) of the Federal Arbitration Act and the manifest disregard standard adopted by the Second Circuit.  Alternatively, this Court should exercise its inherent supervisory powers to insure the integrity of the arbitration process and to maintain the judiciary's right to "[keep its] own skirts clean."  76 Harvard Law Review 1656, 1663 (1963), Note: The Supervisory Power of the Federal Courts.

**WHEREFORE**, Respondents respectfully request that this Court: (a) vacate the Award pursuant to Section 10(a) of the Federal Arbitration Act and the manifest disregard standard adopted by the Second Circuit, (b) reverse the Award and grant Zorc & Chase the relief sought in the Arbitration, (c) grant such other relief as it may deem appropriate.

Respectfully submitted,

Judith L. Chase, Respondent *pro se*

Joseph M. Zorc, Respondent *pro se*

Dated: January 16, 2008

ZORC & CHASE
1719 19th Street, N.W.
Washington, D.C. 20009-1605
Phone:  (202) 667-5000
Fax:     (202) 234-1616
E-mail: ZorcandChase@att.net